# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SHARON SELLMAN   *

      v.   *   Civil Action No. CCB-18-0359

RICHARD V. SPENCER, *Secretary*   *
*Department of the Navy*   *

## MEMORANDUM

Pending before the court is a motion to dismiss, or alternatively, for summary judgment, filed by defendant Richard Spencer, Secretary of the Department of the Navy. For the reasons stated below, the court will grant the motion for summary judgment.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiff Sharon Sellman has worked as a GS-13 financial management analyst ("FMA") at the Patuxent River, Maryland Naval Air Station for the United States Department of the Navy since March 1997.[1] Ms. Sellman is an African-American woman who at all times relevant to this matter was over forty years of age. Defendant is the Secretary for the United States Department of the Navy (the "Navy"), a position currently occupied by Richard Spencer. During all times relevant to this matter, Ms. Sellman's first and second level supervisors were Susan Munford and Linda Mattingly, respectively.

On or about June 15, 2016, pursuant to a job announcement, Ms. Sellman applied for a GS-14 supervisory financial management analyst position. ECF 12-10. Ms. Sellman and six other candidates were identified as the best qualified applicants for the position, ECF 12-6, and Ms. Sellman claimed, without further evidence, that she was the only member of her race, color, and age group to be interviewed, ECF 12-20 at p. 9.

---

[1] On October 1, 2017, Ms. Sellman accepted an offer for a promotion to a GS-14 supervisory financial management position with the Navy. ECF 7 at ¶ 13, n.1.

On July 12, 2016, the selection committee conducted a telephone interview with Ms. Sellman.[2] Karin Branch, Sean Case, Kelly Nelson, Todd Washington, Patrick Dean, and Charles Cooley comprised the selection committee and are all Caucasian, with Mr. Washington serving as the selecting official. ECF 12-12; ECF 12-22 at p. 2. At all times relevant to this matter, Ms. Mattingly was Ms. Branch and Ms. Nelson's first level supervisor, ECF 12-22 at p. 3, and Mr. Washington was Ms. Mattingly's first level supervisor, ECF 12-22 at p. 2. Mr. Cooley and Ms. Mattingly had worked together previously, ECF 12-24 at p. 2, and Ms. Lynch had worked with Mr. Cooley, ECF 12-24 at p. 4. Ms. Sellman both implied and asserted, without evidence, that the selection committee's various overlapping professional relationships put various supervisors in the position to influence unfairly the committee's decision based on Ms. Sellman's race, color, and age. *See* ECF 12-20 at p. 6; ECF 22 at p. 7 ("Mattingly was in the position to influence the decisions of Branch, Case, and Nelson against the selection of Sellman, on the basis of race."). Ms. Sellman also alleged, but did not provide evidence to support, that, in nineteen years, Ms. Mattingly and Cynthia Burke, Ms. Sellman's former second level supervisor, had never selected a person of Ms. Sellman's race or color for a GS-14 supervisory financial management position. ECF 22 at p. 8.

On or about August 9, 2016, Ms. Mattingly informed Ms. Sellman that she had not been selected for the position, and that the committee had selected Robbyn Lynch instead. Ms. Sellman asserted that she has more experience in financial management analysis ("FMA"), more time in government service, and more superior qualifications than Ms. Lynch. *See* ECF 12-8; ECF 12-13. Ms. Sellman also asserted that her supervisors always have rated her FMA work as more than satisfactory, and that she has received certifications and awards for her work. *See* ECF 12-8 at pp.

---

[2] The other six candidates interviewed for the position in person; Ms. Sellman interviewed by telephone due to her unavailability to appear in person on the interview date. ECF 12-23 at p. 2.

4–5.

Ms. Sellman had twice before applied for a GS-14 position, and, after not being selected either time, Ms. Sellman had filed grievances alleging race and age discrimination on April 21, 2014, and January 26, 2015, respectively. ECF 12-20 at pp. 3–4. On December 20, 2016, Ms. Sellman filed a formal complaint with the Navy's Equal Employment Opportunity ("EEO") office, alleging race, color, and age discrimination. ECF 12-4; *see generally Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) ("An employee seeking redress for discrimination cannot file suit until she has exhausted the administrative process") (citing 42 U.S.C. § 2000e-5(b)). On or about November 1, 2017, the EEO issued its final decision. ECF 12-29. Ms. Sellman initiated this suit on February 5, 2018. The Navy filed its motion on August 6, 2018. It has been fully briefed and is ripe for review. Because the court has considered material outside the pleadings, the motion will be treated as one for summary judgment.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party,

3

*Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## ANALYSIS

Title VII prohibits an employer from discriminating against an employee on the basis of, *inter alia*, the employee's race or color. 42 U.S.C. § 2000e-2(a).[3] Absent direct evidence of discrimination, plaintiffs alleging employment discrimination largely must rely on the familiar burden-shifting framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In failure-to-promote cases, plaintiffs must first establish a prima facie case of discrimination by demonstrating by a preponderance of the evidence that 1) they are members of a protected class; 2) the employer had an open position for which they applied or sought to apply; 3) they were qualified for the position; and 4) they were rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005) (internal citations omitted); *Evans v. Techs.. Applications & Servs. Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996) (internal citations omitted). If a plaintiff establishes a prima facie case, the burden of proof shifts to the defendant to "articulate a legitimate, non-discriminatory justification for its allegedly discriminatory action." *Anderson*, 406 F.3d at 268. If the defendant provides a non-discriminatory reason for not promoting the

---

[3] Ms. Sellman's state claims derive from the Maryland analog to Title VII, which involves the same prima facie and burden-shifting frameworks. Given the analogous statutes, and considering Ms. Sellman's failure to produce any genuine issues of material facts as discussed *infra*, the court will not analyze separately Ms. Sellman's state law claims.

4

plaintiff, the plaintiff must then establish that the proffered reason is pretext by proving "*both* that the reason was false, *and* that discrimination was the real reason." *Adams v. Trustees of the University of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (citing *Jiminez v. Mary Washington Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (quotation omitted)); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (if plaintiffs establish a prima facie case and show the proffered explanation to be false, a jury may infer discrimination was the real reason unless no rational factfinder could conclude that the action was discriminatory (internal citation and quotation omitted)).

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (2012), prohibits age-based employment discrimination. Ms. Sellman's ADEA claim similarly involves the *McDonnell Douglas* framework, requiring Ms. Sellman to prove that 1) she was at least forty years old at the time of the vacancy; 2) the committee had an open position for which she was qualified and applied; 3) she was rejected despite her qualifications; and 4) the position was filled by someone substantially younger and similarly qualified, regardless of whether the applicant is also a member of the protected class. *Davenport v. Anne Arundel County Bd. of Educ.*, 998 F. Supp. 2d 428, 436 (D. Md. 2014) (citing *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006)). Should Ms. Sellman accomplish this, the Navy could proffer a non-discriminatory reason for not selecting Ms. Sellman for the GS-14 position, which Ms. Sellman then would need to establish is pretext for age discrimination in order for her claim to succeed. *Laber*, 438 F.3d at 430–31 ("the plaintiff must do more than simply show the articulated reason is false; he must also show that the employer discriminated against him on the basis of age") (internal citations omitted).

### i. Discrimination claims

Ms. Sellman has failed to establish a genuine issue of any material fact regarding her race,

color, and age discrimination claims. In support of her discrimination claims, Ms. Sellman argued that Ms. Mattingly's position as first-level supervisor of three of the committee members put Ms. Mattingly "in the position to influence the decisions . . . against the selection of Sellman[] on the basis of race," ECF 22 at p. 7, or color or age, but she has not proffered any evidence that Ms. Mattingly ever actually employed such an influence for such an end. Further, Ms. Sellman argued that the department's previous promotion decisions as well as the racial composition of the selection committee indicated that the committee did not select her due to her race, color, and age. The court disagrees.

Ms. Sellman has not proffered any evidence to support a conclusion that her race, color, or age factored into the selection committee's decision to promote Ms. Lynch rather than Ms. Sellman. Not only did Ms. Sellman not demonstrate that Ms. Mattingly or Ms. Munford disclosed her age, race, or color to any of the selection panel members for the purpose of improperly influencing the committee members to reject Ms. Sellman on such grounds, Ms. Sellman even failed to allege that any of the committee members ever had any knowledge of her age, race, or color prior to her initiation of this suit. *See, e.g., Davis v. Dimensions Health Corp.*, 639 F. Supp. 2d 610, 616 (D. Md. 2009) (denying employee's religious hostile work environment claim at summary judgment due to employee's acknowledgment that he did not know whether employer or other employees "even knew whether he was a Muslim."). Indeed, the only interview that Ms. Sellman had with the selection committee was conducted via telephone, a medium by which Ms. Sellman's age, race, and color could be surmised only from her own disclosure of such demographic information.

The record in this case does reveal, however, that some members of the selection committee were aware of Ms. Sellman's race, color, and/or age at the time of the interview, though

neither Mr. Washington, Ms. Branch, Ms. Nelson, nor Mr. Case had met her prior to her candidacy. ECF 12-22 at p. 4; ECF 12-23 at p. 2; ECF 12-26 at p. 3; ECF 12-27 at p. 2. But the record contains no evidence indicating that any member of the selection committee considered such information when deciding who should be promoted. To the contrary, in addition to some members not knowing Ms. Sellman's race, color, or age, the committee members also have asserted that they decided against promoting Ms. Sellman based on their weighing of the seven candidates' qualifications and interview responses, and that Ms. Sellman's race, color, and age were not considered during the committee's deliberations. ECF 12-22 at p. 6; ECF 12-23 at p. 5; ECF 12-24 at p. 5; ECF 12-25 at p. 5; ECF 12-26 at p. 6; ECF 12-27 at p. 5. Nothing in the record refutes these assertions. As a result, even if every committee member had known Ms. Sellman's demographic information, the record does not reflect that such information played any role in the committee's conclusion that Ms. Lynch was better qualified than Ms. Sellman for the position. The circumstances as presented do not give rise to an inference of racial or color-based discrimination.

Even if Ms. Sellman had provided facts which could satisfy the requirements of a *prima facie* case of race or color discrimination, the selection committee's conclusion that Ms. Lynch was better qualified is both non-discriminatory and non-pretextual. Ms. Sellman has contested the committee's purported conclusion that Ms. Lynch was better qualified for the position, arguing that such a conclusion is so baseless as to give rise to an inference of discriminatory animus. Although Ms. Sellman argues that her qualifications were superior to Ms. Lynch's at the time of their candidacies, an employee's "unsubstantiated allegations and bald assertions concerning her own qualifications and the shortcomings of her co-workers fails to . . . show discrimination." *Evans*, 80 F.3d at 960 (internal citation omitted).

7

At several points, Ms. Sellman attempted to show that she was more qualified for the GS-14 promotion than Ms. Lynch by demonstrating that she had more government FMA experience and more time working as a GS-13 employee, and that she had obtained a required certification that Ms. Lynch had not obtained at the time of the committee's decision. These purportedly superior qualifications do not advance Ms. Sellman's claim. First, the certification requirement was not identified in the vacancy announcement as a condition precedent to being promoted to the GS-14 position, but rather was noted as an eventual requirement for fulfilling the position's duties. ECF 12-10 at p. 2 (specifying that applicants without DAIWA certification may apply for the position so long as they obtain such certification within 24 months of appointment); ECF 12-8 at p. 7 (requiring applicants to indicate either that they have DAIWA certification or are willing to obtain such certification within 24 months of beginning the position). Second, Ms. Sellman's proposal of how the selection committee should have weighed her government service against Ms. Lynch's combined government and private FMA work experience does not indicate discrimination, as nothing in the vacancy announcement, ECF 12-10, indicated that the selection committee would prioritize applicants with exclusively government FMA experience over applicants with some combination of government and private FMA experience. Finally, a majority of the committee members noted that, in their view, Ms. Lynch performed better during the interview and overall was better qualified for the position given her more extensive FMA experience in both the public and the private sectors. ECF 12-23 at p. 4; ECF 12-24 at p. 4; ECF 12-25 at p. 4; ECF 12-26 at pp 4–5; ECF 12-27 at p. 4. Thus, it is evident that the committee perceived Ms. Lynch's qualifications to be superior to Ms. Sellman's at the time of their candidacies, thereby satisfying the Navy's burden to provide a non-discriminatory reason for not selecting Ms. Sellman for the position.

The burden then shifts to Ms. Sellman to show that she could prove that the Navy's proffered reason for not promoting her is pretext for discrimination. To do so, the only two facts Ms. Sellman provided in support of her Title VII race and color discrimination claims which allegedly rebut the Navy's proffered non-discriminatory reason for not selecting Ms. Sellman are that 1) every member of the selection committee is white and lighter in color than Ms. Sellman, ECF 12-12; ECF 22 at p. 5; and 2) neither Ms. Mattingly nor Ms. Burke have ever selected, during their respective tenures, an applicant of Ms. Sellman's race or color, ECF 22 at p. 8. The latter claim is irrelevant to this court's considerations because neither Ms. Mattingly nor Ms. Burke served on the selection committee that chose to promote Ms. Lynch instead of Ms. Sellman, ECF 12-22 at p. 2, and because Ms. Sellman's claim that Ms. Mattingly and Ms. Burke's relationships with the various members of the selection committee would have made it possible for Ms. Mattingly and Ms. Burke to discourage the committee members from selecting Ms. Sellman based on her race and/or color never moved beyond mere speculation, *see* ECF 22 at p. 16.[4]

Having resolved the latter factual claim, the court now considers the former. On its own, the racial and color composition of the selection committee does not give rise to an inference of illegal discrimination. In their motion, the Navy appropriately relied upon the Fourth Circuit's holding in *McCleary-Evans v. Md. Dept. of Transp., State Highway Admin.*, where the court explained that although the African-American plaintiff's "allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is *consistent* with discrimination, it does not alone support a *reasonable inference* that the decisionmakers were motivated by bias." 780 F.3d 582, 586 (4th. Cir. 2015) (internal citation omitted) (emphasis in

---

[4] Ms. Sellman also argued that Ms. Lynch's previous experience working with some members of the selection committee evidenced bias in favor of Ms. Lynch's candidacy, to Ms. Sellman's detriment. ECF 22 at p. 16. Such a connection does not relate in any way to a race, color, or age-based discrimination claim, and thus the court does not consider it here.

original). In the same way, the racial and color composition of the selection committee, viewed alone, does not support the inference that the committee rejected Ms. Sellman due to her race and/or color. As a result, Ms. Sellman has given the court no reason to question the veracity of the Navy's non-discriminatory reason for not promoting Ms. Sellman.

As for her ADEA claim, Ms. Sellman remarkably conceded in her opposition that she could not establish a prima facie case of age discrimination, yet persisted nonetheless in her request for the court to find that she was illegally discriminated against due to her age. ECF 22 at p. 20; *see also Malina v. Balt. Gas & Elec. Co.*, 18 F. Supp. 2d 596, 603 (D. Md. 1998) ("employee's own 'naked opinion' that he or she was the victim of age discrimination, without more," does not "establish a viable prima facie case of age discrimination." (internal citation omitted)). Ms. Sellman acknowledged that the four-year age difference between herself and Ms. Lynch did not constitute a substantial age difference as is required to establish a *prima facie* case of age discrimination. Undeterred by this dearth of foundational factual support, Ms. Sellman still argued that the court should not dismiss or deny her ADEA claim because, when viewing the ADEA claim with the Title VII claims for which Ms. Sellman asserted she had established a *prima facie* case, the court also should infer age discrimination. The court disagrees. The court will not upend ADEA precedent in order to permit Ms. Sellman's unsupported ADEA claim to proceed on such an unfounded inference. There is no genuine issue of material fact with regard to Ms. Sellman's ADEA claim, given that Ms. Lynch is only four years younger than Ms. Sellman and there is no evidence that any of the panelists considered, or in some cases even knew, Ms. Sellman's age.[5]

---

[5] As with her Title VII claims, Ms. Sellman needed to provide the court with sufficient factual support for her claim that the Navy's reason for not promoting her was pretext for age discrimination either by showing that the "'explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of age discrimination.'" *Davenport*, 998 F. Supp. 2d at 437 (quoting *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004) (internal citation omitted)). Ms. Sellman has provided the court with no facts which indicate that the proffered reasons are pretextual, especially considering her

10

In sum, there simply is no basis for the court to conclude that Ms. Sellman's race, color, or age was a factor in the committee's decision not to promote her, given that 1) there is no indication that the committee members considered or discussed Ms. Sellman's demographics when deliberating who should fill the vacancy, and 2) Ms. Sellman has not provided any indication that the committee's non-discriminatory reason for not promoting her is pretext for discrimination. Accordingly, there are no genuine issues of material fact regarding Ms. Sellman's discrimination claims, and the court will grant summary judgment as to those claims.

### ii. Retaliation claim

To establish a prima facie case for retaliation under Title VII, a plaintiff must demonstrate that 1) she engaged in protected activity; 2) her employer took adverse employment action against her; and 3) a causal connection existed between the protected activity and the adverse action. *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (internal citation omitted). The burden then shifts to the defendant to provide a non-retaliatory reason for the adverse employment action. *Id.*

If the defendant provides such a reason, the burden shifts back to the plaintiff to prove that the proffered reason is pretext for retaliation. *Id.* Ultimately, the plaintiff must prove that her protected activity was a "but-for cause" of her adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also Foster*, 787 F.3d at 252 (finding that *Nassar* did not alter the *McDonnell Douglas* retaliation framework, given that "the *McDonnell Douglas* framework has long required proof at the pretext stage that retaliation was a but-for cause" of the adverse employment action).

Similar to her discrimination claims, Ms. Sellman has not demonstrated that any of the

---

acknowledgment of her inability to meet the requirements for a prima facie case of age discrimination.

selection panel members had any knowledge of her previous discrimination complaints. At minimum, for a causal connection to exist between a protected activity and an adverse employer action, the employer must know of the protected activity. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (establishing that, to find a causal connection between an employee's protected activity and an employer's adverse employment action, employer must have actual knowledge of the protected activity); *see also Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 901 (4th Cir. 2017) ("If an employer . . . never realized that its employee engaged in protected conduct, it stands to reason that the employer did not act out of a desire to retaliate for conduct of which the employer was not aware" (citing *Dowe*, 145 F.3d at 657)). Nothing in the record suggests that the selection committee members were aware of Ms. Sellman's prior discrimination complaints, which the court notes occurred outside the timeframe that normally would indicate a causal connection between the complaints and the adverse employment action. *See Foster*, 787 F.3d at 253 (finding that temporal proximity between complaint and termination tended to show causation when employee was terminated one month after complaining about retaliatory behavior); *Dowe*, 145 F.3d at 657 ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two").

Indeed, all of the committee members have claimed that they had no knowledge of Ms. Sellman's earlier EEO complaints prior to this case. ECF 12-23 at p. 2; ECF 12-24 at p. 3; ECF 12-25 at p. 2; ECF 12-26 at p. 3; ECF 12-27 at p. 2. In her opposition, Ms. Sellman repeatedly speculated about what information regarding her previous complaints had been provided to the committee but provided no concrete facts regarding what information the committee reviewed or, importantly, how such information may have factored into their decision-making process.

Accordingly, the court will grant summary judgment as to the retaliation claim.

### iii. Request for leave to amend

At several points in her opposition, Ms. Sellman requested that, should the court not agree with her analysis, the court grant her leave to amend her complaint. The request was not coupled with a motion for leave to amend or with a proposed amended complaint.

Rule 15 of the Federal Rules of Civil Procedure governs a plaintiff's prerogative to amend her complaint. A plaintiff can amend as a matter of course if the revisions are offered within 21 days of service. Fed. R. Civ. P. 15(a)(1)(A). A plaintiff can amend with the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). Finally, a plaintiff may amend her complaint with the court's leave. *Id.* The rule specifies that "[t]he court should freely give leave when justice so requires." *Id.* The Fourth Circuit has noted that "[t]his liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

Because Ms. Sellman's request comes more than 21 days after service, and because there is no indication that the Navy has consented to Ms. Sellman's request, Ms. Sellman's only recourse is to obtain the court's leave to amend her complaint. While the court recognizes that requests for leave to amend should be granted freely and liberally, it will not grant Ms. Sellman's request due to futility. "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards: A district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)) (internal quotation marks omitted).

Ms. Sellman's claims cannot be saved by amendment. Nothing in the record of this case indicates that any evidence exists to support a claim that Ms. Sellman's race, color, or age was at all a factor in the selection committee's decision to promote Ms. Lynch instead of her, or that she was not selected for the position out of retaliatory animus due to her previous discrimination complaints. Ms. Sellman bases her claims on conjecture and conclusory logic rather than material evidence, and her request for leave to amend did not include any indication that she had additional information which could transform her claims from speculative to substantiated. For that reason, the court will deny Ms. Sellman's request for leave to amend her complaint.

## CONCLUSION

For the foregoing reasons, the court will grant the Navy's motion for summary judgment, and will deny Ms. Sellman's request for leave to amend her complaint. A separate order follows.

3/28/19
Date

*/s/ CCB*
Catherine C. Blake
United States District Judge